SCHWINGEL, Administratrix, and another, Appellants, vs. BOYD, Defendant: HARI and another, Respondents.

*January 10—February 7, 1939.*

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *Ralph E. Axley,* all of Madison.

For the respondents there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

WICKHEM, J.   Philip C. Schwingel was killed in an automobile accident on November 6, 1936.   He was an employee of John Hicks, Inc., a Wisconsin corporation, and at the time of the accident was driving an automobile upon the business of his employer.   For damages arising out of his injuries and death, Caroline Schwingel, as administratrix of his estate, seeks recovery.   The Employers Mutual Liability Insurance Company paid the statutory death benefit under the Workmen's Compensation Act, and seeks reimbursement in this amount.   Plaintiffs contend that the trial court erroneously declined to set aside or change certain answers of the special verdict.   These contentions require an examination of the facts in some detail.

The accident happened on United States Highway No. 12, about three and eight-tenths miles north of Prairie du Sac. Defendant Hoppe is a farmer whose residence is located on the east side of the highway in question. In the vicinity of the Hoppe residence the road is straight for a distance of about two and one-half miles. About one mile of this straight stretch is north of the Hoppe residence. The highway itself is a twenty-foot concrete highway divided into two ten-foot lanes. The width of the west shoulder is about six feet, of which the four feet nearest the concrete is graveled and the balance grass. The west ditch is about three feet deep, dropping gradually to this depth. The east shoulder is of the same width and general character as the west shoulder, but the ditch in the immediate vicinity of the Hoppe driveway is nine and one-half feet wide. Defendant Hari was Hoppe's employee. On the day in question Hoppe and Hari were assisting a neighbor with his corn shredding. This neighbor lived some distance north of the Hoppe farm. Hoppe furnished for this work one team and two wagons. One of the wagons was equipped with a hayrack with front and rear standards but with the sides removed. The other wagon was equipped with an ordinary box. The team was hitched to the wagon containing the hayrack and the wagon with the box was attached thereto by means of a chain, so that it could trail the other wagon. Returning home about 5 o'clock in the afternoon, Hari drove the team onto Highway No. 12, and then proceeded south along this highway in the west ditch until he came within about one hundred feet of the Hoppe driveway, which was on the east side of the road. He then made observations and permitted the traffic to clear. At this time he observed a car coming from the north on Highway No. 12 on a curve leading to the straight portion of the highway, and he estimated that this car was about one mile away. He also observed traffic to the south

which he estimated to be a mile or more away from him. He then proceeded to cross the road diagonally in a southeasterly direction, straightened out his equipment, and drove sixty or seventy feet south with the wheels entirely on the east shoulder and the rack extending slightly over the concrete. When he arrived at the point where it was necessary to manage a turn into the Hoppe driveway, he drove slightly to the right and the rack then extended about three feet over the concrete. Meantime, defendant Boyd was approaching him from the south and the Schwingel car from the north. When the rear wheels of the wagon containing the hayrack had just left the concrete and the corner of the rack still extended about three feet over the concrete, the Boyd car struck the corner of the rack. Boyd did not see the rack until he was within about forty feet of it and up to that time had not seen the Schwingel car. He swerved to the left and met the Schwingel car head-on, one hundred thirty-seven feet north of the Hoppe driveway.

The jury, answering the questions of a special verdict, found that Boyd was negligent as to speed and lookout and being on the left side of the road at the time of the collision. These were found to be causes of the accident. Hari was found by the court to be negligent in driving on the left side of the roadway. He was exonerated by the jury from charges of negligence as to lookout and the manner of making a left turn into the Hoppe driveway. The jury also found that his negligence in traveling upon the left side of the roadway was not a cause of the accident.

Plaintiffs' first contention is that Hari's negligence in driving on the left side of the roadway was a cause of the accident as a matter of law. While the matter is not free from doubt, we conclude that the question of cause was for the jury. The first difficulty with plaintiffs' contention is that the collision between the Boyd car and plaintiffs' car

occurred one hundred thirty-seven feet north of the Hoppe driveway. It follows that at the time when the Boyd car struck the Hoppe hayrack, it was at least two hundred seventy feet from the Schwingel car which, of course, was at that time in plain sight. Had the Schwingel and Boyd cars come into collision within eight or ten feet of the Hoppe driveway the presence of the hayrack upon a portion of the concrete might as a matter of law have constituted in a physical sense a substantial contribution to the ultimate collision. Had the Schwingel car been one fourth of a mile away and had the Boyd car continued on the left side of the highway from the Hoppe driveway to the point of collision, it would have to be held that whatever contribution the presence of the hayrack made to the fatal accident had as a matter of law long ceased to exist. Somewhere in between these distances it is evident that there must be a zone in which reasonable minds might differ whether the deflection caused by the hayrack had ceased to operate because of an adequate opportunity on the part of Boyd to get back to his proper side of the highway. We conclude that this case falls within this zone and we cannot say that a jury might not reasonably have concluded that the invasion of the concrete highway on the part of the hayrack was slight, that the collision with the rack was equally so since none of the Boyd party were even certain that it had occurred, that Boyd had ample time in the two hundred seventy feet then separating him from the Schwingel car fully to correct his position upon the highway, and that whatever contribution in a physical sense the presence of the rack might have made to his deflection from his course, it did not contribute to the collision.

Wholly apart from that, we think another consideration is fatal to plaintiffs' position. It should be kept in mind that the question submitted to the jury was not whether the presence of the hayrack upon the highway was a cause of the

collision, but whether Hari's negligent act of driving on the left side of the highway so contributed. It is apparent to us that the direction in which Hari was traveling made no contribution to the collision. Under the circumstances the Boyd car would have struck the rack no matter which way the latter was being driven. Had Hari been driving north he would have been literally within his rights and the jury would have been warranted in concluding that the time of the accident was not sufficiently after sunset to require him to furnish lights or reflectors. As a matter of fact, at the time of the accident the hayrack was nearly at right angles to the highway and was being drawn off the highway in an easterly direction. The situation is thus not materially different than it would have been had Hari kept to his right side of the road until he reached the Hoppe driveway, then cut directly across the highway. In other words, the direction of this slow-moving vehicle made no contribution whatever to this accident. It was his presence on the highway, regardless of his direction, that made whatever contribution was made by the hayrack to the collision. This is immaterial because it was, of course, not negligence for him merely to be upon the highway with his vehicle. This circumstance distinguishes the case from cases cited by the plaintiffs.

In *Scharbillig v. Dahl,* 208 Wis. 393, 243 N. W. 414, plaintiff traveling south drove onto the east or left side of the road without any occasion or excuse. Another car was approaching plaintiff proceeding in the opposite direction. Defendant was proceeding some two hundred feet back of this car. The driver of the car immediately ahead of the defendant, observing that plaintiff was not returning to the right side of the road, slowed up, put on his emergency brake, and came to a stop. This compelled defendant to turn his car to the left-hand side of the road to avoid striking the car ahead of him. Plaintiff about that time returned to his right

side of the road and the collision occurred. This court held that plaintiff was guilty of contributory negligence as a matter of law and that this negligence was a cause of the collision.

In *Mauermann v. Dixon,* 217 Wis. 29, 258 N. W. 352, defendant was intoxicated and his car was swerving from side to side of the road as he approached the place of collision. He was on the wrong side of the road when the collision occurred. A conclusion of the jury that defendant's presence on the wrong side of the road did not operate as a cause was held to be perverse.

In *Butts v. Ward,* 227 Wis. 387, 279 N. W. 6, one of defendants had negligently left a disabled truck upon the concrete highway. Plaintiff's car approached this truck from one direction and the other defendant's car approached it from an opposite direction. When plaintiff's car was about opposite the truck on his right side of the road, defendant's car came up behind the truck and to avoid hitting it turned left and collided with plaintiff's car. The jury found that the negligence of the operator of the truck was a proximate cause of the collision and this court sustained that finding.

These cases are all distinguishable from the case at bar. In the *Butts Case* it was the negligent leaving of the truck upon the highway that was held to be the cause of plaintiff's injury. The truck was on its right side of the road, and it would have caused or failed to cause the accident no matter which way it was facing. Whatever causal connection there was between the truck and the accident was due to its presence and not to its direction. In the case at bar the presence of the rack upon the highway was not negligent. It was only the direction of its movement that is claimed to be negligent. In the *Scharbillig* and *Mauermann Cases* it was the movement or operation of the car on the wrong side of the road which was the factor contributing to the accident. In the case at bar the movement of the hayrack had nothing to do with the collision.

It is also contended that the jury's finding that Hari was not guilty of negligence with respect to lookout and to the manner of entering the Hoppe driveway are not supported by the evidence. There is no merit to either contention. Hari's testimony is to the effect that he saw Boyd approaching and that he estimated that he was in a position of safety so far as the Boyd car was concerned. He made the turn into the driveway in accordance with the necessities of the operation, it being necessary that he maneuver the wagon with the hayrack as well as the trailer wagon into a relatively narrow driveway. The jury could have considered that his encroachment upon the concrete highway was only to the extent necessary to make this turn, and that this represented such a slight invasion of the highway that he had a right under the conditions of visibility to assume that the Boyd car could and would pass safely. Upon his own testimony there was seven feet of concrete between the edge of the hayrack and the center line of the highway, and we cannot say that a jury could not under these circumstances have exonerated Hari from negligence with respect to lookout and the manner of entering the driveway.

The foregoing conclusions require that the judgment be affirmed.

*By the Court.*—Judgment affirmed.